## PECK *v.* WM. M. BIRCH COMPANY ET AL.

[No. 11,547.    Filed June 5, 1923.]

1. MUNICIPAL CORPORATIONS.—*Sewers.*—*Notices.*—*Validity of Contracts.* — *Assessment.* — *Injunction.* — *Collateral Attack.* — *Statutes.*—Under §8710 Burns' Supp. 1921, Acts 1921 p. 324, the validity of a contract let by a town board for the construction of a sewer under §§8722, 8959 Burns 1914, Acts 1905 p. 219, Acts 1913 p. 12, cannot be subsequently attacked in a suit instituted more than ten days after the execution thereof and after the actual commencement of the work thereunder, to cancel and enjoin the enforcement of the assessment, because of mere irregularities in the publication of the notices required before letting the contract.    p. 65.

2. MUNICIPAL CORPORATIONS.— *Public Improvements.*— *Validity of Contract.* — *Assessment.* — *Injunction.* — *Statutes.* — Section 8710 Burns' Supp. 1921, Acts 1921 p. 324, providing that the validity of a contract for public improvement cannot be subse-

quently questioned, except in suits to enjoin the performance thereof, instituted within ten days after execution of the contract or prior to actual commencement of work, does not apply to the action of town boards *after* the completion of a sewer by the contractor in making out the assessment roll and publishing notice thereof to property owners and the time for filing remonstrances, as provided for in §8725 Burns 1914, Acts 1907 p. 563. p. 65.

3.    MUNICIPAL CORPORATIONS.—*Sewers.—Notices.—Publication in Only One Newspaper.—Assessment.—Statutes.*—A notice of a hearing of matters contained in a preliminary assessment roll, prepared by a town board after the completion of a sewer by the contractor, is not defective because it was published in the only newspaper of the town and not in any other newspaper of the county as required by §9604 Burns' Supp. 1921, Acts 1920 [Spec. Ses.] p. 66, for notices affecting town business, since the trustees in the performance of their duties in relation to the sewer did not act as official representatives of the town, but by virtue of an express statute conferring that power upon them. p. 67.

4.    TIME.—*Notices of Assessment for Sewers.—Publication.—Statutes.—Construction.*—Under §8725 Burns 1914, Acts 1907 p. 563, requiring that notice of the time of hearing remonstrances against assessments for the construction of a sewer in a town be published "once each week for two consecutive weeks" and "shall also name a day after date of last publication" when remonstrances will be heard and assessments fixed, a notice published once in each week for two successive weeks and a day named fixed for such hearing was after the date of last publication, although only eleven days between the date of first publication and the hearing, *held* sufficient to give the board authority to pass upon and confirm the assessment. p. 67.

5.    MUNICIPAL CORPORATIONS.—*Public Improvements.—Sewers.—Construction.—Assessment for Benefits.*—A sewer adapted for use as a local sewer and to receive sewage from branch sewers and the cost of construction to be assessed against land directly benefited can be legally constructed without first submitting the matter to an election of the qualified voters of a town, as required by §8961b Burns 1914, Acts 1909 p. 187 in the construction of a general sewer where the cost is to be paid by the municipality. p. 71.

From Delaware Superior Court; *Robert Murray,* Judge.

Action by Samuel J. Peck against the Wm. M. Birch Company and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Simmons & Simmons,* for appellant.

*White & Haymond, Edward R. Templer* and *O. M. Rearick,* for appellees.

McMAHAN, C. J.—Complaint by appellant to cancel and to enjoin appellees from enforcing a sewer assessment against appellant's real estate. A demurrer to this complaint having been sustained judgment was rendered against appellant that he take nothing. The error assigned is that the court erred in sustaining the demurrer to the complaint.

The facts alleged in the complaint are in substance as follows:

On June 14, 1921, the board of trustees of the town of Eaton in Delaware county passed a declaratory resolution for the construction of a general sewer. Notice of the passage of this resolution was published June 16 and 23, 1921, stating that the board of trustees would meet June 28, at which time all remonstrances against such proposed improvement would be heard. The board met June 30, in special session and confirmed the passage of said resolution. On July 7 and 14, 1921, notice was published stating that on July 20, bids would be received for the construction of said sewer, and on the last-named date the contract for the construction of such sewer was awarded appellees W. M. Birch and others, doing business under the name of Wm. M. Birch Company, for $32,276.21, and a contract was on said day entered into between the board of trustees of said town and said Wm. M. Birch Company for the construction of such sewer.

On August 11, 1921, and before the contractors entered upon the construction of the sewer appellant

served such contractors with a written notice to the effect that the proceedings for the construction of the sewer were void and that he would not pay any assessment that might be assessed against any real estate owned by him.

The contractors completed the sewer and on January 26, 1922, the town board caused a preliminary assessment roll to be made and on said day caused notice, giving names of those assessed, description of lands assessed and amount of the assessment, to be published January 26, and February 2, notifying those who desired to file remonstrances against their assessments, that the board would meet February 6, 1922, for the purpose of hearing such remonstrances as might be filed. The board of trustees thereafter confirmed the assessment against appellant's real estate as set out in said assessment roll and ordered the same spread and entered on the records of said town.

Each and all of said notices were published in a weekly newspaper of general circulation printed and published in said town, said notices being published in said newspaper on the days as above stated and not otherwise. There was but one newspaper published in said town. There were, however, during all the time two newspapers of general circulation printed and published in the city of Muncie in said county, one representing the Republican party and one representing the Democratic party, and both of them being of general circulation in the town of Eaton, and representing the two leading political parties. Neither of said notices was published in any newspaper in the state except in the one paper published at Eaton.

Appellant alleges in his complaint that the assessment so made against his real estate is void for the following reasons: 1. Neither of the notices published contained a statement of the estimated cost of the sewer.

2.   No notice was published informing the public and contractors of the general nature of the sewer and that specifications were on file in the office of the town board and calling for sealed proposals for the construction of the sewer.   3.   No notice was given after the adoption of the declaratory resolution as required by law of the hearing at which the board would hear remonstrances and determine the question as to whether the assessment district was properly bounded, and whether the benefits assessed to the several lots and parcels of land and to the city would be equal to the estimated cost of the sewer.   That the notice of the meeting to be held February 6, 1922, was not published for two weeks as required by law.   4.   No notice to the public and contractors of the estimated cost of the sewer and stating time and place where the proposals for the construction of said sewer was published in Indianapolis.   5.   That the question of constructing said sewer was never submitted to the voters of said town at a general or special election.

The defendants named in said complaint are the contractors, the board of trustees and the clerk-treasurer of said town.

Section 8722 Burns 1914, Acts 1905 p. 219, provides that whenever the board of public works of a city of the first, second, third or fourth class shall order the construction of a local sewer, it shall adopt a resolution to that effect, setting forth a description of such sewer and full details, drawings and specifications for such work, that notice of such resolution shall be published "once each week for two consecutive weeks" in some daily newspaper of general circulation in such city, which notice shall state that on the day named therein, the board will hear all persons interested or whose property will be affected by the proposed sewer, that on the day named in such notice all such interested persons

may appear before the board and have a hearing, that the city engineer shall on or before the day set for such hearing file with the board his estimate of the total cost of the work and that no contract shall be let under such resolution which shall exceed the estimate. If the board after such hearing decides that the benefits accruing to the abutting property are equal to the estimated cost, such finding shall be entered of record, and, if the original resolution is confirmed in its original form or as modified, the board shall cause notice to be published in some daily newspaper of general circulation in the city "once each week for two consecutive weeks," stating the general nature of the work, that drawings and specifications thereof are on file in the office of the board and calling for sealed proposals for such work by "a day therein named, not earlier than ten days after the first of said publications," and fixing such day or some other day when such proposals shall be opened and considered.

This section also provides that whenever any sewer from its size and character, is intended and adapted not only for use by the owners of abutting property, but also for receiving sewerage from collateral drains the board shall cause to be prepared a map showing the exact course of the proposed sewer and branches, if any, which shall be placed on file, when the board shall adopt a resolution ordering the construction of such sewer, and publish a notice of the adoption thereof as "provided in case of local sewers," which notice "shall name a date after the last day of publication" when the board will receive and hear remonstrances and determine whether the drainage district is properly bounded, whether any other territory should be included and whether any land included in such district should be excluded and determine whether the special benefits will equal the estimated cost. The findings of the board upon said questions shall be entered of record and are

final and conclusive on all parties. If the board finds that other lands shall be included in the district, notice to the owners of such lands shall be given as provided above. If the original resolution is confirmed or modified the board shall advertise for proposals and consider the same in the same manner as is provided in the construction of a local sewer. In case the board is of the opinion that the drainage district should be enlarged it may adopt a supplementary resolution and proceed thereunder with "notice  *  *  *  published twice as aforesaid," which notice shall fix "a date after the last day of said publication" when the property owners can be heard.

Section 8959. Burns 1914, Acts 1913 p. 12, provides that said §8722 Burns 1914, *supra,* shall apply to the construction of sewers and other public improvements in cities of the fifth class and to towns. These sections are §§117 and 265 of "An Act Concerning Municipal Corporations," approved March 6, 1905, Acts 1905 p. 219, §8722 *et seq.* Burns 1914. Section 8959 Burns 1914, *supra,* as amended in 1913, provides that whenever it is provided that notice shall be given by publication, the intention is that such notice shall be given by publication in a daily or weekly paper of general circulation published in the city or town.

Section 107 of the said act of 1905 as amended in 1921, Acts 1921 p. 324, §8710 Burns' Supp. 1921, provides: "That in the event of the execution of any contract for any public improvement, the validity of such contract shall not subsequently be questioned by any person, except in a suit to enjoin the performance of such contract, instituted by such person within ten days from the execution of said contract or prior to the actual commencement of the work thereunder."

This provision of the statute is applicable to the instant case and stands as an insuperable barrier to the

contention of appellant that the town board did 1, 2. not have any right to let the contract for the construction of the sewer because of the alleged defects in the publication of the several notices prior to the letting of the contract. The alleged defects in such notices were mere irregularities and did not render the contract void. This provision of the statute, however, does not apply to the action of the town board after the completion of the work by the contractor or to the giving of notice to property owners of the preliminary or primary assessment, and of the time when owners of real estate assessed may file remonstrances against such assessments, as provided for in §8725 Burns 1914, Acts 1907 p. 563. This section provides that the board as soon as the contract is completed shall make out an assessment roll, with the names of the property owners and the description of the property primarily assessed, and opposite the name and description the total assessment against each lot or parcel of land shall be set out. It then provides that the board shall cause to be published in some daily newspaper of general circulation in said city, "once each week for two consecutive weeks," a notice giving a general description of the improvement, the street, alley or public place where it has been made, the terminals of the sewer, whether local or general and if the latter the boundaries of the district benefited and to be assessed. It is required that this notice state that the assessment roll, with names of owners and descriptions of property to be assessed with the amount of each assessment is on file and can be seen in the office of the board. The notice "shall also name a day after the date of the last publication" when the board will hear remonstrances against the assessments. The board is given authority to sustain the preliminary assessment as reported, or

to modify the same and then confirm it as modified. It is also provided in this section that: "If there be a defect in the proceedings with respect to one or more interested persons the same shall not affect the proceedings except so far as it may affect the interest or property of such person or persons and shall not avail any other person therein. In case of such defect supplementary proceedings of the same general character as those hereinbefore described may be had to correct or supply the same."

Appellant contends that the notice of the hearing of the matters set out in the preliminary assessment roll is void: (1) because it was not published in any newspaper other than the one published in the town of Eaton; (2) because the first publication was only eleven days before the time set for the hearing.

In support of the first contention appellant calls attention to §4, Acts 1920 (Spec. Ses.) p. 66, §9604d Burns' Supp. 1921, which provides that in all cases where county, township, city, town and school officers are required to publish notices and reports affecting county, township, city, town and school business in a public newspaper, such officers shall publish such notices and reports in two newspapers representing the two political parties casting the highest number of votes at the last preceding general election in the county, township, city or town. If there is but one paper published in the town such notice is required to be published in that paper and also in some other newspaper of general circulation if such there be published in the county.

The first contention and objection to this notice cannot be sustained unless the notice to the property owners of the matters contained in the preliminary assessment roll is a notice affecting town business, as it is only notices that affect town business that the officers of the town are required to publish as provided for in this

section of the statute. Appellant makes no claim that the notice in question was one affecting town business other than may be inferred from the fact that he has cited said last-named section in support of his contention that the notice is void because it was published only in the one paper.

The construction of the sewer in the instant case was not, in a strict legal sense, a town matter, and the trustees in the performance of their statutory duties 3. in relation to such sewer did not act by virtue of their position as official representatives of the town, but by virtue of an express statute specifically conferring that power upon them, and, so far as the property owners who are assessed for the construction of such sewer, they are not acting as agents of the town while exercising the powers conferred on them by the statute. We therefore hold that the notice was not one relating to or affecting town business and was not defective because it was published only in the one newspaper published in the town of Eaton. *Board, etc.,* v. *Fullen* (1887), 111 Ind. 410, 413, 12 N. E. 298, 13 N. E. 574.

It remains for us to determine whether the publication of the notice on January 26, and February 2, to the property owners named in the assessment roll 4. that the board of trustees would meet February 6, for the purpose of hearing any remonstrances that might be filed and fixing the amount of the assessment against the various tracts of land affected, was sufficient to give the board of trustees authority to confirm the preliminary assessment against appellant's property.

Appellant insists that the assessment against his property is void because but eleven days elapsed between the date of the first publication and the day named in the notice for the hearing. In other words he con-

tends that the statute, §8725 Burns 1914, *supra*, requiring such notice to be published, "once each week for two consecutive weeks," means that such notice shall be published for two weeks or fourteen days and that two insertions once each week are not sufficient,

It has been held that §800 Burns 1914, §757 R. S. 1881, requiring publication of the notice of a sheriff's sale of real estate "for three weeks successively," means a publication for twenty-one days, and not simply three insertions, which would ordinarily cover a period of but fifteen days. *Loughridge* v. *The City of Huntington* (1877), 56 Ind. 253; *Meredith* v. *Chancey* (1877), 59 Ind. 466; *Smith* v. *Rowles* (1882), 85 Ind. 264; *Security Co.* v. *Arbuckle* (1890), 123 Ind. 518, 24 N. E. 329.

In *Southern, etc., R. Co.* v. *Indianapolis, etc., R. Co.* (1907), 168 Ind. 360, 81 N. E. 65, 13 L. R. A. (N. S.) 197, which was an action to condemn real estate for railway purposes, the court had occasion to construe §932 Burns 1914, Acts 1905 p. 59, wherein it is provided that upon the return of notice showing service thereof for ten days, or "proof of publication for three successive weeks in a weekly newspaper * * * the last publication to be five days before the day set for the hearing * * *," the court or judge in vacation shall appoint appraisers to assess the benefits or damages by reason of the appropriations. Publication was had March 15, 22 and 29, 1906. The hearing in that case was fixed for April 5, 1906. It was there contended that the publication should have been for the full period of twenty-one days, and that five days should have elapsed between the period of publication and the day set for the hearing. The court on page 366 after quoting from the statute said: "This certainly does not require four publications, and as the hearing may be set, according to the statute, five days after the last publication, the law-making power must have intended,

by requiring proof of publication for three successive weeks in a weekly newspaper, three publications in a weekly newspaper on its weekly days of issue, and regarded that 'as publication for three successive weeks.' *Bachelor* v. *Bachelor* (1804), 1 Mass. 256; *Swett* v. *Sprague* (1867), 55 Me. 190; *Alexander* v. *Alexander* (1889), 26 Neb. 68, 41 N. W. 1065. Any other construction would mean that at least eleven days must elapse after the third publication." Under this holding the hearing in that case might have been had April 3, which would have been five days after the last publication although it would have been but twenty days after the first publication.

In *Early* v. *Doe* (1853), 57 U. S. (6 How.) 610, 14 L. Ed. 1079, the court in construing a statute requiring a notice to be inserted in a newspaper "once in each week, for at least twelve successive weeks," called special attention to the words "for at least" and held that the expression "for at least twelve successive weeks" meant a duration of the time there was in twelve successive weeks and that the publication should have been for the full period of eighty-four days. But the court in the course of its opinion said: "We do not doubt if the statute had been 'once in each week for twelve successive weeks,' a previous notice of the particular day of sale having been given to the owner of the property, that it might very well be concluded, that twelve notices in different successive weeks, though the last insertion of the notices for sale was on the day of sale, was sufficient." See, also, *Ex parte Lower* (1912), 178 Ala. 87, 59 So. 611; *Tidd* v. *Grimes* (1903), 66 Kans. 401, 71 Pac. 884; *Ratliff* v. *Magee* (1901), 165 Mo. 461, 65 S. W. 713; *State* v. *Yellow Jacket Silver Mining Co.* (1868), 5 Nev. 415.

*Smith* v. *Rowles, supra,* is cited in *Finlayson* v. *Peterson* (1896), 5 N. Dak. 587, 67 N. W. 954, 57 Am. St.

586, 33 L. R. A. 534, holding where law requires publication "for six successive weeks at least once in each week," forty-two days must intervene between the day of the first publication and the day of sale the court saying: "If the statute had declared that the notice should be published once a week in each of six successive weeks, its meaning would have been different. But it does not so declare. Its explicit provision is that the notice shall be published for six successive weeks."

As hereinbefore stated §8725 Burns 1914, *supra,* provides that the notice of the preliminary assessment shall be published "once each week for two consecutive weeks" and shall name "a day after the date" of last publication on which remonstrances will be heard and the assessments fixed. We cannot escape from the conclusion that "once each week" means "once in each week," and that the board had the authority to fix the day when the hearing would be held. The day of such hearing however under the statute must be a day after the last publication. And in this connection attention is called to the requirement in §8722 Burns 1914, *supra,* that the notice to contractors calling for proposals shall be published "once each week for two consecutive weeks," and that the day when the proposals will be received shall not be earlier than ten days after the first publication. This clearly indicates that the legislature did not intend that fourteen days must elapse between the first publication and the day when the proposals might be filed, opened and considered.

Any other holding would render the expression "not earlier than ten days after the first of said publications" nugatory. In so far as the other notices provided for in §8722 Burns 1914, *supra,* are concerned the only limitation as to the date when the hearing can be had is that it must be "after the last day of publication." And this is true in so far as the notice in question is con-

cerned. It was published once in each week for two successive weeks, and the day named therein when the board would receive and hear remonstrances against the amounts assessed against the several lots and parcels of land was after the date of the last publication.

We hold that appellant's second objection to the notice is not well taken and that the notice was sufficient to give the board of trustees authority to pass upon and confirm the assessment against appellant's property at the meeting held February 6, 1922.

Appellant's contention that the sewer in question could not be legally constructed without first submitting the matter to an election of the qualified voters of the town is not well taken. Section 8961b Burns 1914, Acts 1909 p. 187, does not apply under the facts in the instant case. The sewer in question was adapted for use as a local sewer and also to receive sewerage from branch sewers, the cost of construction to be assessed against the lots and parcels of land directly benefited. It is not a general sewer where the cost is to be paid by the municipality.

Judgment affirme˚